Woods Lumber Company, Inc.

*v.*

Alfred T. MacFarland, Commissioner of Revenue,

State of Tennessee.

355 S. W. 2d 448.

(*Nashville*, December Term, 1961.)

Opinion filed March 7, 1962.

668

JOHN S. MONTEDONICO, CHARLES H. DAVIS, Memphis, for appellant.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, Nashville, for appellee.

MR. JUSTICE WHITE delivered the opinion of the Court.

The first question involved herein is whether a Tennessee Corporation engaged in the business of manufacturing lumber in Tennessee and in Arkansas is required to include within its net income for the purpose of Tennessee excise tax its net profit from the sale of timber lands in Arkansas. The next question is that in view of the peculiar and unusual circumstances existing in the taxpayer's business for the taxable year here involved, does the use of the statutory formula contained in the Tennessee corporate excise tax law result in an arbitrary and palpably disproportionate amount of the taxpayer's net earnings being allocated to Tennessee for tax purposes.

The facts are that the complainant is a corporation organized under the laws of the State of Tennessee and

it began its corporate existence in this State in the year 1946. Its principal office and place of business is in Memphis, Tennessee, but it has been qualified as a foreign corporation to do business in the State of Arkansas and it has actively and regularly carried on its lumber manufacturing activities in that state. It operates a sawmill at Clarendon, Arkansas and another at Memphis, Tennessee. To supply its mills the corporation obtains cutting rights on lands belonging to others. On other occasions it buys from independent loggers, farmers or independent contractors, but only a small part of its supply for its Clarendon plant comes from the latter source. The complainant maintains a lumber yard and office at Clarendon from which all Arkansas-produced lumber is shipped to customers in accordance with orders received. It also maintains a lumber yard and office at Memphis from which all Tennessee-produced lumber is shipped to customers in accordance with orders received. The Memphis mill also buys lumber at wholesale which is stacked on its yard and then sold in the ordinary course of business along with the lumber actually manufactured at the Memphis mill. The complainant also acts as a broker in the purchase and sale of lumber, although this activity does not produce a substantial amount of profit.

On occasions the complainant purchases land from which it cuts the timber and manufactures it into lumber and on one occasion in the year 1948 it purchased a 15,000 acre tract of land in Arkansas from which it cut valuable merchantable timber for several years and until such time as the Arkansas Game and Fish Commission acquired said acreage as a Game preserve. This acquisition took place in complainant's fiscal year 1957-58 and was for a total price of $459,207.90 of which $395,109.35

represented a net profit to the complainant. The record reveals that the sum of $25,000.00 was paid to the complainant upon the closing of the sale with $212,500.00 being payable July 1st, 1958 as the first installment, the second was due on July 1, 1959 in the amount of $106,-250.00 which was promptly paid when due. The final installment of $115,457.90 was due and payable and was paid on July 1, 1960.

Complainant reflected a pro rata portion of its profits from the sale of its timber land upon its federal and Arkansas state income tax returns for the years 1957-58 in the amount of $21,510.37 and for the year 1958-59 there was reflected on said return a pro rata portion of its profit of $182,691.17. It did not, however, include as income upon its Tennessee excise tax return for the year 1958-59 any portion of said sum of $182,691.17 representing the profit from the sale of the timber land allocable to that fiscal year.

When the excise tax return for the year 1958-59 was audited by the Commissioner of Revenue of the State of Tennessee it was determined by him that such profit comprised a part of complainant's net income for that year and was erroneously excluded by said corporation and that of said income the sum of $69,967.07 was allocable to Tennessee for tax purposes. In accordance with such audit, there was assessed against the complainant an excise tax deficiency for the year 1958-59 in the amount of $2,623.76, and interest amounting to $104.95, together with some collection expense, all of which totaled $2,817.16. Said deficiency, interest and expenses were paid by the complainant corporation under protest and suit was instituted to recover said amount.

The case was tried in the Chancery Court upon the original bill, answer thereto and upon deposition and stipulation of facts. The Chancellor held that the complainant was not entitled to the full relief sought, but that the installment payment received by the complainant in the taxable year ending June 30, 1959, with respect to the sale of the Arkansas land, should be included in determining the sales ratio of the statutory formula. This resulted in a holding that the net income allocated to Tennessee for the fiscal year July 1959 was reduced from $162,323.37 to $147,947.46 and that the defendant was entitled to receive a refund of $600.44. This sum has been refunded to the complainant but for the failure of the Chancellor to decree the full relief sought complainant has appealed and assigned errors.

Complainant keeps three ledgers, one for its Memphis, Tennessee operation, one for its Clarendon, Arkansas operation and one covering its general corporate activity. Complainant sells and ships to its customers west of the Mississippi from its Clarendon, Arkansas mill, and to customers east of the river from its Memphis mill. By dividing its business operations and its shipments, as indicated, it obtains a more satisfactory freight rate and, therefore, such divided operation and divided geographical shipments are in conformity with sound business judgment. Both of the mills are under the same general supervision and management, its corporate affairs being directed from its home office in Memphis, Tennessee, with the meetings of the directors and stockholders being held there. The sale of the tract of land in question was handled by and out of the Memphis, Tennessee office. For the purpose of benefiting its general operation its advertisers in trade journals accord-

ing to the testimony of the secretary-treasurer of the corporation. He also testified that the Memphis, Tennessee and Clarendon, Arkansas plants are under the same general supervision and management.

The Tennessee Excise Tax Law is neither a property tax nor an income tax, but is a tax based upon the privilege of doing business in corporate form in Tennessee. The pertinent part of Section 67-2701 T.C.A. provides:

"All corporations, (for profit) (domestic or foreign) * * * shall, without exception, pay to the commissioner of finance and taxation annually an excise tax, in addition to all other taxes, equal to three and three-quarters per cent (3.75%) of the net earnings for their next preceding fiscal or calendar year, from business done within the state; * * *."

In the case of corporations, cooperatives, joint stock associations and business trusts doing business in Tennessee and elsewhere the net earnings shall be apportioned as hereinafter set forth and the net earnings thus apportiond in Tennessee shall be deemed to be the earnings arising from business done within the State and shall be the measure of this tax. Such method of apportionment shall be as set forth in Sections 67-2707 to 67-2712 and in Section 67-2707 and 67-2708 the statutes provide that if the principal business in this state is manufacturing "the entire net earnings shall be apportioned to Tennessee" and in the case of dealers "the entire net earnings shall be apportioned to Tennessee".

Complainant realizes its net income from operations in Tennessee and Arkansas and is, therefore, liable for

taxation under Chapter 27 of Title 67 under the Code, the same being the corporate excise tax with respect to its total net earnings allocated to Tennessee in accordance with the appropriate formula. The complainant is a dealer. It apportions its earnings in Tennessee in accordance with Section 67-2708 T.C.A.

In the case of *Bank of Commerce and Trust Co. v. Senter,* 149 Tenn. at page 569, 260 S.W. 144, at page 151 the Court defined the "term 'net earnings,' not being defined by the act, must be given its usual and ordinary meaning of what is left of earnings after deducting necessary and legitimate items of expense incident to the corporate business".

In the case of *Southern Coach Lines v. McCanless,* 191 Tenn. 634, 235 S.W.2d 804, the Court said:

"All of the net earnings of a corporation, without regard to the source from which the same are derived, constitute the measure of the excise tax."

Based upon these decisions of our Court the defendant has drafted and enforced certain tax regulations carrying into effect the purposes of the Act.

In the case of *Brookside Mills Inc. v. Atkins, Commissioner,* 204 Tenn. 517, 520, 322 S.W.2d 217, 218, it is said:

"This Court, upon numerous occasions has held that all net earnings of a corporation, without regard to the source from which they were derived, constituted the measure of the excise tax and that since the statute did not define the term 'net earnings' it must be given its usual and ordinary meaning, that is what is left

of earnings after deducting necessary and legal items of expense incident to the corporate business. * * *

"It was the intention of the Legislature that all net earnings of a corporation, from whatever source derived, shall constitute the measure of the tax."

■ ■ We adopt that portion of the memorandum opinion rendered by the Chancellor in which he said:— "The Chancellor is of the opinion that the business carried on by the complainant is a unitary business and that the defendant Commissioner acted within the law when he applied the apportionment formula for dealers to complainant's entire net earnings. There is no distinction to be made between net earnings from the sale of lands, stocks, bonds, income on tax exempt securities, or sale of other assets, for all of the net earnings of a domestic corporation, without regard to the source from which the same are derived, constitute the measure of net earning used in the apportionment formula."

The case of *Dickey Clay Mfg. Co. v. Dickinson*, 200 Tenn. 25, 289 S.W.2d 533, followed the well settled principle in the law of state taxation of multi-state business, where the business of the taxpayer is unitary to apportion to it for income tax purposes a fair share of entire net income.

In the case of *Reynolds Tobacco Co. v. Carson*, 187 Tenn. 157, 213 S.W.2d 45, the Court said:

"A state's tax law is not to be nullified merely because the result is achieved through a formula which includes consideration of interstate and out-of-state transactions in their relation to the intrastate privilege."

In determining what is a unitary business we look again to the case of *Dickey Clay Mfg. Co. v. Dickinson,* supra, to some factors considered by the Court in that case in determining that the manufacturing company was a unitary business. The Court said:

"The unity of ownership, the unity of management, and the unity of the use to a greater or lesser extent, which is found in the instant case, sustains the right of the State to tax on the basis of an allocation formula."

In the Reyonlds Tobacco Company case, which was approved in the Dickey Clay case, the Court said:

"It is only when application of the formula results in allocating to the taxing state an amount of earnings or net worth palpably disproportionate to the business done or property owned in the taxing state that the 'due process clause' of the Federal Constitution may be successfully invoked by the corporation taxed."

There can be no doubt from the facts appearing in this case that the complainant is engaged in a unitary business and that the operation of its business, although carried on in Arkansas and Tennessee, is in fact only one business and under our laws should be taxed as such.

While it is true that the two operations of the complainant are separated by distance and separate ledgers are maintained in order to meet the requirements of the State of Arkansas, it is one operation with one ownership, one management, one set of offices, one board of directors and the entire management and supervision of the business is carried on in Memphis.

■ The complainant contends that it is entitled to some relief from the standard apportionment formula as set out in Section 67-2711 T.C.A. This is not a matter for the Court to decide, in the first instance, but it is a matter that addresses itself to the Commissioner of Revenue upon application of the taxpayer. If the Commissioner of Revenue upon proper application and on proper showing is convinced that the adoption of another method of apportionment would be fair and just and if the Attorney General approves then, and in that event, such different apportionment method may be employed.

■ Despite the fact that we are not required to do so under the law, we have examined the record and find the facts do not support the averment that the use of the statutory formula results in an arbitrary and palpably disproportionate amount of complainant's net earnings being allocated to Tennessee for tax purposes.

■ The well established statutory and decisional law of this State is that all corporations, domestic and foreign, organized for profit and engaged in business in Tennessee and elsewhere are required to allocate to Tennessee for excise tax purposes a fraction of their total net earnings from all sources, such fraction to be arrived at in accordance with the statutory formula applicable to the class in which each corporation may fall.

Section 67-2701 T.C.A. applies to all corporations, cooperatives, joint-stock associations and business trusts, organized under the laws of Tennessee or under the laws of any other state or country for profit and doing business in the State of Tennessee.

We agree with the Chancellor that there is no distinction to be made between net earnings from the sale of

land, stock, bonds, income on tax exempt securities, or sale of other assets, for all of the net earnings of a domestic corporation, without regard to the source from which the same are derived, constitute the measure of net earnings used in the apportionment formula.

While it is true that the taxpayer made an unusually large gain on the sale of the lands involved herein, there does not appear to be any valid reason why there should be any variation from the standard apportionment formula applied to all taxpayers.

After a careful consideration of this entire record, we are of the opinion that the Chancellor reached the proper conclusion and for that reason all of the assignments of error are overruled and the action of the Chancellor is in all things affirmed at the cost of the appellant.