**FMC CORPORATION, Plaintiff-Appellee,**

v.

**Jayne Ann WOODS, Commissioner of Revenue for the State of Tennessee, and Brooks McLemore, Attorney General of the State of Tennessee, Defendants-Appellants.**

Supreme Court of Tennessee.

June 22, 1981.

Cecil D. Branstetter, Carrol D. Kilgore, Nashville, for plaintiff-appellee.

Jim G. Creecy, Deputy Atty. Gen., Nashville, for defendants-appellants.

## OPINION

DROWOTA, Justice.

The plaintiff, FMC Corporation, is a multi-state business licensed to do business in Tennessee. FMC has a subsidiary, FMC Export, which is a domestic international sales corporation (DISC). Pursuant to §§ 991–97 of the Internal Revenue Code, FMC can achieve substantial tax savings by paying "commissions" to the DISC based upon export sales. It is the treatment of these "commissions" under our excise tax statutes and the regulations promulgated under them that is the subject of this litigation.

FMC Export is incorporated in Delaware and has no offices or employees in Tennessee. It employs over seventy-five people and maintains its own offices elsewhere. In the tax years in dispute, 1972–74, FMC paid FMC Export an amount which would yield to FMC the maximum federal tax

benefits. This included a reimbursement to FMC Export for selling expenses plus a transfer payment necessary to get the tax breaks.

The nature of these payments is best shown by example. In 1974, FMC had approximately 284 million dollars in gross sales and 197 million in costs, yielding a gross profit of 87 million dollars. It paid the DISC 43 million dollars from this gross profit of 87 million. FMC Export, the DISC, incurred 11 million dollars in selling expenses to leave it with 32 million in net income. From this 32 million, FMC Export paid its parent, FMC, a dividend of 16 million dollars. These figures are rounded to the nearest million and are set out graphically in the Appendix.

The Tennessee excise tax is a tax on a corporation's net earnings from business done in this state. T.C.A. § 67–2702. During the tax years in question, the term "net earnings" was not defined in the excise tax chapter. T.C.A. § 67–2701 et seq. Therefore, the term must be given its usual and ordinary meaning. *Bank of Commerce v. Senter*, 149 Tenn. 569, 592, 260 S.W. 144 (1923). It has been defined as what is left of earnings after deducting necessary and legitimate expenses incidental to the corporate business. *Woods Lumber Company v. MacFarland*, 209 Tenn. 667, 674, 355 S.W.2d 448, 451 (1962). The Chancellor ruled that FMC could deduct from its gross receipts the full amount of the commissions which it paid FMC Export, approximately 43 million in 1974.

The excise tax statutes also allow the taxpayer to deduct from its earnings receipts which are the product of business activities outside of Tennessee. T.C.A. § 67–2707. The regulations of the Department of Revenue in effect during these tax years refer to these earnings as nonapportionable income. Rule 21, Franchise and Excise Tax Rules and Regulations. Nonapportionable income is defined by this regulation as, "... income derived from sources or property outside of Tennessee and unrelated to Tennessee operation, ...." *Id.* It is not disputed that the dividends paid by

FMC Export to FMC constitute nonapportionable income. Rule 21 further provides, however, that these deductions for nonapportionable income must be "... net, after related expenses...." In other words, a corporate tax payer does not pay excise tax on earnings coming from activities outside of Tennessee except to the extent that it incurred expenses related to the production of these earnings. But for the operation of Rule 21, a corporate taxpayer could reduce its Tennessee tax base by making investments in other states. The Chancellor ruled that the dividends did, as both parties concede, constitute nonapportionable income. He further ruled, however, that FMC's deduction was wiped out because the commissions which FMC paid to the DISC were expenses related to the production of nonapportionable income and, therefore, had to be subtracted from the dividend to arrive at the amount of the deduction. Since the commission was larger in amount than the dividend, the deduction for nonapportionable income was reduced to zero.

The Chancellor also ruled that FMC could recover excessive prepayments of tax even though these prepayments were not made under protest.

■ We are of the opinion that the Chancellor erred in allowing FMC to deduct the full amount of the commissions it paid to FMC Export from its gross profits in arriving at net earnings. The payments were of dual purpose. They were in part a reimbursement for selling expenses incurred by FMC Export. They also represented payments necessary to accomplish federal tax savings. For example, in 1974, FMC paid FMC Export 43 million, of which 11 million was a reimbursement for FMC Export's selling expenses. The remaining 32 million dollar payment was necessary in order for FMC to deduct half that amount from its federal taxable income. We hold that the Chancellor was correct in allowing FMC to deduct these commissions from their earnings insofar as they represented a reimbursement to FMC Export for selling expenses. We do not agree that the portion of these payments which represented an attempt to get tax deductions should be treated as an item of expense, as that term is ordinarily used. *See Woods Lumber Company v. MacFarland, supra.* These payments, for example 32 million in 1974, did not contribute to the production of the earnings from which they were deducted. They made possible the tax deductions and the subsequent dividends.

■ On the other hand, we think the Chancellor correctly netted these commissions against FMC's nonapportionable income. As stated, without the commissions, there would have been no dividend. If we were to hold that these payments were not expenses related to the production of nonapportionable income, any corporation doing business in Tennessee with an out of state subsidiary could reduce its tax base by making a transfer payment to the subsidiary and having the subsidiary transfer the money back in the form of a dividend.

■ Likewise, we affirm the Chancellor's ruling as to the corporation's right to a refund of excessive prepayment of taxes even though the taxes were not paid under protest. In *Kroger Co. v. Tollett,* 608 S.W.2d 846 (Tenn.1980), the taxpayer prepaid his taxes and when the Commissioner assessed the initial deficiency, he credited the taxpayer's account with an amount to which he conceded the taxpayer was entitled. This Court held that where the Commissioner retains an overpayment not paid under protest, for which the taxpayer is entitled to a refund, and applies it against other deficiencies paid under protest, the taxpayer can sue to recover the excessive payments in addition to the payments made under protest. 608 S.W.2d 850.

■ Finally, the appellee contends that the Tennessee Excise Tax is unconstitutional on its face and as applied. We hold that this contention is without merit.

To summarize, we hold that FMC can deduct from net earnings payments which represent a reimbursement of selling expenses incurred by its subsidiary but not payments made solely to accomplish federal tax savings. We hold that the Chancellor

correctly netted these commissions against the dividends received by FMC, thereby reducing the deduction to zero. We hold that the Chancellor correctly allowed FMC to challenge the assessment. Finally, we hold that the excise tax statute is constitutional on its face and as applied. We remand to the Chancery Court of Davidson County for the entrance of an order consistent with this opinion.

The costs of this appeal shall be taxed equally between the parties.

HARBISON, C. J., and FONES, COOPER and BROCK, JJ., concur.

## APPENDIX

FMC 1974

284 million gross sales
197 million costs

87 million gross profit
43 million paid to DISC

44 million retained

FMC Export 1974

43 million received from parent
11 million selling expenses

32 million net income
16 million paid back to parent

16 million retained