INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 3858, a/k/a Germantown Firefighters Association, Plaintiff,

v.

THE CITY OF GERMANTOWN, Sharon Goldsworthy, individually, and in her official capacity as Mayor, and Patrick Lawton, individually, and in his official capacity as City Administrator, Defendants.

No. 99–2289 DA.

United States District Court, W.D. Tennessee, Western Division.

May 10, 2000.

Deborah A. Godwin, Agee, Allen, Godwin, Morris, Laurenzi & Hamilton, Memphis, TN, for plaintiff.

Edward R. Young, John Marshall Jones, Heather R. Gunn, Young & Perl, Memphis, TN, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD, District Judge.

Before the court are motions by both parties for partial summary judgment.

Plaintiff International Association of Firefighters Local 3858 a/k/a Germantown Firefighters Association ("Association") moves for partial summary judgment on the basis that there is no genuine issue of material fact that need be resolved to find that Defendants are in violation of Tennessee Code Annotated § 7–51–204. Defendants the City of Germantown ("Germantown"), Sharon Goldsworthy ("Goldsworthy"), and Patrick Lawton ("Lawton") contend that there is a factual dispute over whether T.C.A. § 7–51–204 applies to the instant case. Defendants further argue that summary judgment in their favor on this issue is warranted because T.C.A. § 7–51–204 is unconstitutional under the United States and Tennessee Constitutions. For the reasons stated herein, Plaintiff's motion for partial summary judgment is denied, and Defendants' motion for partial summary judgment is granted.

## I. Background Facts

The Association, a firefighters' union, was chartered by the International Association of Firefighters on July 1, 1998. On September 22, 1998, representatives of the Association notified Defendants of the formation of the Association, and requested that Defendants recognize the Association and deduct union dues from firefighters' wages. The following day, Lawton responded, declining to recognize the union or deduct union dues. The Association reiterated its request on October 13, 1998, and on October 16, Lawton again refused. The Association made another request on October 28, 1998, and then on November 17, Thomas Woodley ("Woodley"), general counsel for the International Association of Fire Fighters, requested that Defendants reconsider their position. On December 10, 1998, Lawton responded to Woodley, confirming Defendants' refusal to recognize the union or deduct union dues.

At the center of this entire controversy, and the only point at issue in the current

motions, is a state statute, T.C.A. § 7–51–204. Plaintiff claims that it is an "employee association" pursuant to the provisions of that statute, and that therefore Defendants are legally obligated to deduct union dues from firefighter wages and remit the dues to the Association. Defendants argue that it is a genuine issue of material fact as to whether T.C.A. § 7–51–204 applies to Plaintiff.

Defendants further contend that T.C.A. § 7–51–204 is unconstitutional, in that it violates the equal protection guarantees of the United States and Tennessee Constitutions, and in that it is unconstitutionally vague. Accordingly, Defendants argue that they are entitled to summary judgment on this issue.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 35 (2d ed. Supp.1996).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l*, 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible or usable at trial. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721, at 40 (2d ed.1983). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th Cir.1998). Justifiable inferences based on facts are also to be drawn in favor of the nonmovant. *Kalamazoo River*, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

## III. Analysis

The first issue to be resolved is whether T.C.A. § 7–51–204 applies to the Association. Only if the court finds that the statute is applicable need it go on to consider whether the statute is unconstitutional under either the Tennessee or United States Constitution. The court avoids deciding the constitutional issues if possible, of course, because "[d]eciding constitutional issues only after considering and rejecting every nonconstitutional ground for the decision is a 'fundamental rule of judicial restraint.'" *Firestone v. Galbreath*, 976 F.2d 279, 286 (6th Cir.1992) (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984)).

### A. Plaintiff Is An "Employee Association" Under T.C.A. § 7–51–204

At issue here is whether Plaintiff qualifies as an "employee association" under T.C.A. § 7–51–204. The statute reads in its entirety as follows:

(a)(1) Any municipal corporation or other political subdivision of the state which maintains a regular fire department with regular full-time employees shall, upon the written request of any such employee, make monthly deductions of membership dues for an employee association if the chief administrative officer of the employee association has previously certified to the chief executive officer of the municipality or political subdivision that the association's current membership is not less than ten percent (10%) of all the employees of the municipality or political subdivision who qualify for membership.

(2) Such deductions shall be made by the municipality or other political subdivision from each regular paycheck and shall be remitted to the employee association within thirty (30) days after the deduction is made.

(3) Authorization for such payroll deduction shall continue in effect until the next regular pay period following the thirtieth day after receipt by the municipality or other political subdivision of a written revocation signed by the employee.

(b) The provisions of this section shall not apply in counties having a population of:

| not less than | nor more than |
| --- | --- |
| 13,600 | 13,610 |
| 28,690 | 28,750 |
| 48,400 | 48,500 |
| 49,275 | 49,375 |
| 77,700 | 77,800 |

according to the 1980 federal census or any subsequent census.

In filing a motion for partial summary judgment, Plaintiff is in effect asking the court to make a preliminary finding that as a matter of law Defendants are in violation of T.C.A. § 7–51–204. Defendants argue that summary judgment on this issue in favor of Plaintiff is inappropriate because there is a genuine issue of material fact as to whether Plaintiff is an "employee association" under the statute. Initially, the court must point out that Defendants have confused "law" with "fact." Whether Plaintiff is an "employee association" under T.C.A. § 7–51–204 is not a genuine issue of material fact because it is not a factual issue at all. Construction of a statute is a question of law. *See, e.g., Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994). Indeed, though Defendants mislabeled this issue as a factual dispute, their argument is purely a legal one. Therefore the court will proceed to consider the legal issue of whether Plaintiff is an "employee association" under T.C.A. § 7–51–204.

In construing the meaning of a statute, courts must first look to the text of the statute. *United States v. Alvarez–Sanchez*, 511 U.S. 350, 356, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *Floyd v. U.S. Postal Service*, 105 F.3d 274, 276 (6th Cir.1997). If the language of a statute is unambiguous, courts must accord the language its plain meaning. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Toti*, 24 F.3d 806, 809 (6th Cir.), cert. denied, 513

U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). In other words, unambiguous statutory language that is susceptible to only one objectively reasonable interpretation is ordinarily conclusive, absent a clearly expressed legislative intent to the contrary. *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Floyd,* 105 F.3d at 276.

The role of the courts in construing statutes is to carry into execution the intent and will of the legislature. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). *See also Roseman,* 890 S.W.2d at 29 (Courts should construe statutes so as to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."). Courts must look not only to a particular clause, but should consider the statute in its entirety, including the object and policy of the law. *Kokoszka,* 417 U.S. at 650, 94 S.Ct. 2431.

■ Plaintiff first argues that the statute itself defines "employee association" in such a manner that it includes Plaintiff. The key language here is found at the beginning of T.C.A. § 7–51–204(a)(1), which provides that "Any municipal corporation or other political subdivision of the state which maintains a regular fire department with regular full-time employees shall, upon the written request of any such employee, make monthly deductions of membership dues for an employee association ..." The Association contends that based on this language, an "employee association" under the statute is "any association of full time employees of a regular fire department maintained by a municipal corporation or political subdivision of the state." The court agrees that this is a natural and logical conclusion to draw from the language of T.C.A. § 7–51–204.

The usual and ordinary meaning of "employee association" bolsters the conclusion that Plaintiff falls within the definition of that term. Black's Law Dictionary does not define "employee association," but it defines "employee" as "a person who

works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance," and "association" as "a gathering of people for a common purpose; the persons so joined." Black's Law Dictionary 543 & 119 (7th Ed.1999). Assigning these meanings to the statutory language at issue here compels the conclusion that Plaintiff is an "employee association." The same is true using the definitions found in Webster's Dictionary. An "employee" is "a person who works for another in exchange for financial compensation," and an "association" is "an organized group of people who share a common interest, activity, or purpose." Webster's II New College Dictionary 369 & 68 (1995).

Defendants argue that the definition of "employee association" in Words & Phrases definitively excludes the Association. That source provides that "[a] union affiliated with a labor federation which was incorporated in another state, but which had been denied a certificate of authority to do business within state, was not." Words & Phrases, (perm. ed.), Volume 3 (citing *Hoffman's Vegetarian Restaurant Co. v. Lee,* 170 Misc. 815, 10 N.Y.S.2d 287, 289 (N.Y.Sup.1939)). As Plaintiff points out, however, this is not a definition at all, but merely an example. And furthermore it is not an example of an employee association, but an example of what is *not* an employee association. As such, this source is of no help in the instant matter.

Defendants next suggest that a related statute in the Tennessee Code defines "employee association" in such a manner that it excludes Plaintiff. Statutes relating to the same subject or purpose should be construed together, and the construction of one statute may be aided by considering the language and legislative intent of another statute. *Petition of Gant,* 937 S.W.2d 842, 845 (Tenn.1996); *Spence v. Miles Laboratories, Inc.,* 810 F.Supp. 952, 960 (E.D.Tenn.1992). In this case, Defendants point to T.C.A. § 8–23–204, which

deals with payroll deductions for associations of employees of the state government. This statute defines "employee association" as "any association of employees complying with the provisions of subdivision (a)(2), except when otherwise noted herein." T.C.A. § 8–23–204(a)(2) lists the following criteria of an employee association:

(A) It grants membership to any employee who applies for membership without regard to such employee's job classification, state agency or location;

(B) It grants the same rights and privileges of membership to all its members;

(C) it provides equal services to its members without regard to the job classification, state agency or location of employment within the state of a member;

(D) It has a membership of not less than twenty percent (20%) of the employees of state agencies in the executive, legislative or judicial branch;

(E) It has as one (1) of its objectives the promotion of an efficient and effective work force for state government in Tennessee, and if affiliated in any manner with another organization, the other organization shall have similar objectives;

(F) It is itself a wholly domestic employee organization which is not a part of a multi-state employee organization which controls it or has any right of control; and

(G) It is an independent association that will not merge or join with another employee or labor organization without over fifty percent (50%) of its members affirmatively voting to become so merged or joined.

The Sixth Circuit has held that section (F) is unconstitutional, but that the remainder of the "employee association" definition from T.C.A. § 8–23–204 is constitutional. *See Brown v. Alexander*, 718 F.2d 1417 (6th Cir.1983). Defendants argue

that this definition should be used to also define the meaning of "employee association" in T.C.A. § 7–51–204.[1] Plaintiff suggests that T.C.A. §§ 7–51–204 and 8–23–204 do not relate to the same subject, and therefore that T.C.A. § 8–23–204 does not apply to the instant case. According to Plaintiff, T.C.A. § 8–23–204 applies only to state agency employees. Plaintiff argues that the definition from T.C.A. § 8–23–204 should not apply to T.C.A. § 7–51–204 because the state legislature was aware of the existence of T.C.A. § 8–23–204 when it passed T.C.A. § 7–51–204 into law, and could have specifically adopted the definition from T.C.A. § 8–23–204 but chose not to.

Plaintiff also argues that even if the definition from T.C.A. § 8–23–204 applies to T.C.A. § 7–51–204, Plaintiff is an "employee association." Plaintiff cites the By-Laws and Constitution of the Germantown Firefighters Association, and the By-Laws and Constitution of the International Association of Fire Fighters. According to Plaintiff, these documents show that the Association grants membership to any employee within its jurisdiction without regard to job classification, that it provides the same rights and privileges of membership to all its members, that it provides equal services to all its members, and that more than 10% of eligible employees are Association members. Thus, claims Plaintiff, it satisfies the criteria of subsections (A) through (D) of T.C.A. § 8–23–204(a)(2).

Also, the Preamble to the Constitution of the International Association of Fire Fighters provides that among the objectives of the International Association are "to promote as safe and healthy working environment for fire fighters and emergency medical or rescue workers as is possible through modern technology; to promote the establishment of just and reasonable working conditions; to place the members of the Association on a higher plane of skill

---

**1.** With the exception that T.C.A. § 7–51–204(a)(1) specifically requires membership of only 10% of eligible employees, whereas T.C.A. § 8–23–204(a)(2)(D) requires a minimum 20% membership.

and efficiency; to promote harmonious relations between fire fighters and emergency medical or rescue workers and their employers ..." Plaintiff contends that this shows that one of its objectives is the promotion of an efficient and effective work force, and thus that it satisfies the requirement of T.C.A. § 8–23–204(a)(2)(E).

Finally, Plaintiff suggests that it satisfies T.C.A. § 8–23–204(a)(2)(G) in that Article XV of its Local Constitution requires that Association members not sign any documents governing membership until such documents have been presented to the membership for discussion, and that the Association's position will be governed by the action taken by the membership.

Not until their most recent submission to the court (Respondents' Reply to Petitioner's Response to Cross–Motion for Partial Summary Judgment and Response to the State of Tennessee's Memorandum in Support of the Enforceability of Tennessee Code Annotated § 7–51–204) have Defendants presented any argument as to why Plaintiff is not an "employee association" under the standard of T.C.A. § 8–23–204. They now argue that Plaintiff does not meet the T.C.A. § 8–23–204 definition because Plaintiff does not promote an efficient and effective work force. This is so, according to Defendants, because of such reasons as the fact that Plaintiff participates in labor strikes, because of the potential for divided loyalties by employees between their employer and Plaintiff, and because Plaintiff restricts its members' freedom of association. It is unnecessary to get to the meat of Defendants' argument to see that they have missed the mark. T.C.A. § 8–23–204(a)(2)(E) requires only that an employee association *"has as one of its objectives* the promotion of an efficient and effective work force..." (emphasis added). That Plaintiff satisfies this standard is shown by the language from the Preamble to the International Constitution cited by Plaintiff. Whether Plaintiff *in fact* will create a *more* efficient and effective work force is probably impossible to know. Furthermore, it is an extremely fact-intensive question, and is not part of the definition created by the state legislature in T.C.A. § 8–23–204.

That Defendants' proposed interpretation of T.C.A. § 8–23–204 is overly fact-intensive is further highlighted by the fact that Defendants now suggest that if the court finds that T.C.A. § 8–23–204 applies, further discovery is necessary to determine if Plaintiff meets the definition of "employee association." Any non-lawyer would probably rightfully marvel at the amount of time, money, and effort that has already been expended in determining the meaning of such a simple phrase, and one that on its face does not seem difficult to decipher. That observation leads the court back to the beginning of its discussion on statutory interpretation. While the court believes Plaintiff is an "employee association" under the definition of that term found in T.C.A. § 8–23–204, it holds that it is unnecessary to look to that statute to find the meaning of "employee association" in T.C.A. § 7–51–204. Instead, the court reminds the parties of the most basic tenet of statutory interpretation: If the language of a statute is unambiguous, courts must accord the language its plain meaning. *Ron Pair Enters.,* 489 U.S. at 240, 109 S.Ct. 1026. *See also Burlington N.R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987); *Todd v. Weakley County,* 1998 WL 395172, *3 (Tenn.Ct.App.1998) (citing *Woods Lumber Co. v. Macfarland,* 209 Tenn. 667, 355 S.W.2d 448, 451 (Tenn. 1962)). Plaintiff is "an organized group of people who share a common purpose," and is comprised of people "who work for another in exchange for financial compensation." *See* Webster's II New College Dictionary 68 & 369 (1995). The court holds that Plaintiff is an "employee association" according to the usual and ordinary meaning of the term. Therefore the court agrees with Plaintiff that T.C.A. § 7–51–204 on its face applies to the Association. However, this is only the threshold step in

the instant analysis. The court will now proceed to discuss whether the statute itself is unconstitutional under the Constitution of the United States or that of Tennessee.

### B. T.C.A. § 7–51–204 is Unconstitutional

#### 1. T.C.A. § 7–51–204(b) Violates the Equal Protection Guarantees

Defendants argue that part (b) of T.C.A. § 7–51–204 violates the equal protection guarantees of both the federal and the state Constitutions. This section of the statute reads as follows:

(b) The provisions of this section shall not apply in counties having a population of:

| not less than | nor more than |
| --- | --- |
| 13,600 | 13,610 |
| 28,690 | 28,750 |
| 48,400 | 48,500 |
| 49,275 | 49,375 |
| 77,700 | 77,800 |

according to the 1980 federal census or any subsequent census.

Defendants argue that this exclusion of certain Tennessee counties from being subject to the statute is a classification which has no rational basis, and therefore violates the United States and Tennessee Constitutions.

Equal protection of the laws is guaranteed by the Fourteenth Amendment to the United States Constitution, which provides in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The Tennessee Constitution similarly guarantees equal protection, through two clauses. Article I, Section 8 states that:

[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property but by the judgment of his peers or the law of the land.

Tenn. Const. art. I, § 8. Article XI, Section 8 provides:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Tenn. Const. art. XI, § 8. The Supreme Court of Tennessee has held that Article I, § 8 and Article XI, § 8 confer "essentially the same protection" as the equal protection clause of the United States Constitution. *Tennessee Small School Systems v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). The state Supreme Court has also adopted the equal protection analytical framework developed by the United States Supreme Court, utilizing one of three levels of scrutiny, depending on the classification and the right at issue. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn.1994) (citing cases).

The highest level of scrutiny, strict scrutiny, applies if a legislative classification operates to the disadvantage of a suspect class or if the classification interferes with a fundamental right. *Id.* (citing *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). The intermediate level, heightened scrutiny, applies when a quasi-suspect classification is at issue. *See, e.g., J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). All other classifications are subject to the lowest level of scrutiny, rational basis. *See, e.g., San Antonio Independent School Dist.*, 411 U.S. at 27, 93 S.Ct. 1278.

■ In the instant case, there is no dispute that the appropriate level of scrutiny is the rational basis standard. In *City of Charlotte v. Local 660, Int'l Assoc. of Firefighters*, a union sued a municipality over the city's refusal to allow the union dues checkoff requested by the plaintiff. 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976). The Supreme Court, applying an equal protection analysis, held, inter alia, that the city's practice of allowing a dues checkoff for some organizations but not others was subject only to a rational basis standard. *Id.* at 286, 96 S.Ct. 2036.

The Tennessee Supreme Court has described the rational basis test in the following manner:

The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

*Tennessee Small School Systems*, 851 S.W.2d at 153 (quoting *Doe v. Norris*, 751 S.W.2d 834, 840–42 (1988)) (internal citations omitted).

There is no bright line rule which divides reasonable from unreasonable classifications. Rather, reasonableness varies with the facts of any given case. *Id.; see also Harwell v. Leech*, 672 S.W.2d 761, 763 (Tenn.1984). The Supreme Court of Tennessee has further explained:

[T]he classification must not be mere arbitrary selection. It must have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others should be so preferred or discriminated against. There must be reasonable and substantial differences in the situation and circumstances of the persons placed in different classes which disclose the propriety and necessity of the classification. If legislation arbitrarily confers upon one class benefits, from which others in a like situation are excluded, it is a grant of a special right, privilege, or immunity, prohibited by the Constitution, and a denial of the equal protection of the laws to those not included .... The fundamental rule is that all classification must be based upon substantial distinctions which make one class really different from another; and the characteristics which form the basis of the classification must be germane to the purpose of the law ....

*Tester*, 879 S.W.2d at 829 (quoting *State v. Nashville, Chattanooga & St. Louis Railway Co.*, 124 Tenn. 1, 135 S.W. 773, 775–76 (1911)).

■ The party challenging the statute has the burden of proving that the classification is unreasonable, *Tennessee Small School Systems*, 851 S.W.2d at 153, and it is not an easy burden to carry. "[I]f some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Id.*

■ Despite the high standard which must be met to mount a successful challenge, the court agrees with Defendants that there is no rational basis for the classification in T.C.A. § 7–51–204. The court is aware that it is often preferable to certify a question on the constitutionality of a state statute to the state's highest court. On this issue, however, the Supreme Court of Tennessee has already spoken loudly

and clearly. In *Sutton v. State*, 96 Tenn. 696, 36 S.W. 697 (1896), the court addressed the constitutionality of a statute which read in part as follows:

> Be it enacted by the general assembly of the state of Tennessee, that in all the counties of the state having a population of not less than 30,000, and not more than 34,000, and of 55,000 and over, according to the federal census of 1890, it shall be unlawful for any owner of any horse, cow, sheep, goat, hog or other livestock to knowingly permit the same to run at large within the limits of such counties of this state; ...

*Id.* at 697. The court held that the statute violated the equal protection guarantee of the state constitution due to the population brackets which, for no discernible reason, imposed the law on some but not others. "The classifications are unnatural, arbitrary, and capricious; and, being so, the statute is for that reason unconstitutional, null, and void." *Id.* at 700. The court concluded:

> We do not mean to say that all legislation intended to affect a particular class, and not the public at large, is obnoxious to the constitution, and therefore invalid, but only that such legislation, to be constitutional and valid, must possess each of two indispensable qualities: First, it must be so formed as to extend to and embrace equally all persons who are or may be in the like situation and circumstances; and, secondly, the classifications must be natural and reasonable, not arbitrary and capricious. The present act possesses neither of those qualities.

*Id.*

In *State ex rel. Scandlyn v. Trotter*, 153 Tenn. 30, 281 S.W. 925 (1926), the state Supreme Court struck down, as an unconstitutional violation of the equal protection guarantee, a statute which provided for free text books in schools in "counties having a population of not less than 112,00 and not more than 113,000 by the census of 1920, or any subsequent census." *Id.* at

926. The court stated that classification based on population is appropriate in certain legislation, but not all, and that there was no apparent or conceivable reason why the citizens of certain counties should receive the benefits and burdens of this legislation not imposed on citizens of other counties. *Id.*

More recently, in *State v. Tester*, 879 S.W.2d 823 (Tenn.1994), the court addressed the equal protection implications of a DUI second offense work release statute which contained the following language:

> The provisions of this subsection only apply to counties having a population of more than seven hundred thousand (700,000) according to the 1980 federal census or any subsequent federal census or to counties having a metropolitan form of government.

*Id.* at 826 (quoting T.C.A. § 41–2–128(c)(9)). Applying the rational basis test, the court struck down the statute, stating that "the State has failed to demonstrate any rational basis for the classification or to advance a hypothetical state of facts to support the classification, nor can we conceive of a reasonable basis for the classification at issue. Accordingly, we affirm the trial court's judgment finding the provision limiting to three counties the applicability of the work release statute ... an unconstitutional classification under the equal protection guarantees of both the federal and state constitutions." *Id.* at 829–30.

Finding that the statute before the court in the instant case violates the equal protection guarantees is not even a close call. The statute itself contains no language explaining any reason for the classification drawn by the legislature. Nor can the court conceive of any rational basis for requiring the municipalities in some counties to deduct firefighter union dues while exempting other counties. Moreover, the legislative history behind T.C.A. § 7–51–204 reveals that the population bracket

exclusions were made a part of the law simply because some legislators did not want the law to affect their home districts. *See* H.R. 430, 95th Gen. Assembly, 1st Regular Sess. (Tenn.1987) (including such comments as "This simply takes my district out of this bill. I move for passage."; and "The only thing this does is eliminate Loudon, Roane, and Monroe counties. I move for passage."). Finally, the State of Tennessee itself has intervened in this case, pursuant to the court's granting of its request to defend the constitutionality of T.C.A. § 7–51–204. Yet even now the State provides no rational basis for the exclusion of certain counties from the coverage of the statute, instead arguing only that if the court finds T.C.A. § 7–51–204(b) unconstitutional, the remainder of the statute should remain in full force and effect. The court will proceed to discuss that issue next, as it indeed does hold that T.C.A. § 7–51–204(b) violates the equal protection guarantees of the U.S. and Tennessee Constitutions.

### 2. *Elision Does Not Apply*

Plaintiff and the State of Tennessee argue that the constitutional infirmity of T.C.A. § 7–51–204(b) should not result in the striking down of the entire statute. They urge the court to elide the unconstitutional section (b), leaving the remainder of T.C.A. § 7–51–204 intact. The result would be that Plaintiff would be an "employee association" covered by the constitutionally correct altered statute. Defendants contend that the doctrine of elision is inappropriate under the circumstances of this case.

■■ The doctrine of elision permits a court to elide an unconstitutional portion of a statute and find the remaining parts of the statute to be constitutional and effective. *State v. Tester,* 879 S.W.2d 823, 830 (Tenn.1994) (citing *Lowe's Companies, Inc. v. Cardwell,* 813 S.W.2d 428, 430 (Tenn. 1991)). Elision is appropriate only when circumstances make apparent that applica-

tion of the doctrine would be consistent with legislative intent. *Id.*

Plaintiff and the State first argue that it is the intention of the Tennessee General Assembly that if part of any statute is found to be unconstitutional, the remaining portion of the statute should remain in full force and effect. They cite the general severability clause which applies to the entirety of the Tennessee Code, and which reads as follows:

> It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the code would otherwise be unconstitutional or ineffective. If any one (1) or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance.

T.C.A. § 1–3–110.

Plaintiff and the State also point to the legislative history of the particular statute at issue here. Though never codified, a severability clause was part of the original bill as it was passed in 1987. That clause read:

> If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

1987 Tenn. Pub. Acts, Chapter No. 223, § 5.

However, the doctrine of elision is not favored by the courts of Tennessee. *Tester*, 879 S.W.2d at 830. And in determining whether to apply the doctrine, the proper inquiry for this court is whether it would be applied by the Supreme Court of Tennessee. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 466 (6th Cir.1999); *see also City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The state's highest court has stated:

> The doctrine of elision is not favored. The rule of elision applies if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and enforceable ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage. However, a conclusion by the court that the legislature would have enacted the act in question with the objectionable features omitted ought not to be reached unless such conclusion is made fairly clear of doubt from the face of the statute. Otherwise, its decree may be judicial legislation. The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute enforced if some other portion of

the statute has been declared unconstitutional.

*Tester*, 879 S.W.2d at 830 (quoting *Gibson County Special School Dist. v. Palmer*, 691 S.W.2d 544 (Tenn.1985)).

The state Supreme Court places a premium on avoiding judicial legislation, and has clearly held that the Tennessee Code's general severability clause at T.C.A. § 1–3–110 is not enough to justify elision of a statute that does not have its own severability clause. *Tester*, 879 S.W.2d at 830. Instead, the test that the courts of Tennessee use is whether the statute which would be elided contains a severability clause. *See, e.g., State v. Tester*, 879 S.W.2d 823, 830 (Tenn.1994); *Lowe's Companies, Inc. v. Cardwell*, 813 S.W.2d 428, 430–31 (Tenn.1991); *Franks v. State*, 772 S.W.2d 428, 430 (Tenn.1989); *Gibson County Special School Dist. v. Palmer*, 691 S.W.2d 544, 551 (Tenn.1985); *Catlett v. State*, 207 Tenn. 1, 336 S.W.2d 8 (1960); *Davidson County v. Elrod*, 191 Tenn. 109, 232 S.W.2d 1 (1950). *But see In re Swanson*, 2 S.W.3d 180, 188–89 (Tenn.1999).[2]

There is no severability clause in the codified version of T.C.A. § 7–51–204. However, Plaintiff and the State of Tennessee urge the court to look at the statute's legislative history and consider the severability clause that was part of the original 1987 bill. *See* 1987 Tenn. Pub. Acts, Chapter No. 223, § 5. They argue that the severability clause is fully part of

---

**2.** The court is mindful of and slightly troubled by *Swanson*. This is the only case the court has come across in which the Supreme Court of Tennessee applied the doctrine of elision to a statute which did not contain a severability clause. The court did not announce or even acknowledge that it was setting a new standard. Instead it merely cited *Tester* for the proposition that elision is appropriate "when a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted." *Swanson*, 2 S.W.3d at 189 (citing *Tester*, 879 S.W.2d at 830). Despite the absence of a severability clause in the act before the *Swanson* court, the court concluded that, "Given

the breadth and scope of the act and the fact that the [elided sections] were but a small portion of the Act, it seems apparent to us that the General Assembly would have enacted the Act notwithstanding the unconstitutional sections." *Id.* It remains unclear what the significance of *Swanson* may be. Until the state Supreme Court makes clear that it is abandoning its longstanding test, this court believes it must treat *Swanson* as an anomaly and follow the precedent of the many other state Supreme Court cases which stand for the proposition that elision may only be applied if there is a severability clause in the statute to be elided.

the statute despite this clause's absence from the codified version of the law. In support of this argument, they cite T.C.A. § 1–1–108. That law, which is part of the authorization for the Tennessee code commission to publish the Tennessee Code Annotated (*see* T.C.A. §§ 1–1–101 et seq.), specifically authorizes the commission to omit certain clauses, including severability clauses, in preparing the manuscript of the revised compilation of the Tennessee Code. It also states that in its editing, the commission should not alter the sense, meaning, or effect of any act. T.C.A. § 1–1–108(a).

The state Supreme Court addressed this very issue in *Tester.* In that case, like the instant case, a severability clause had been included in the statute at issue when that statute was originally passed. 879 S.W.2d at 830 n. 2. However, the severability clause had never been codified. *Id.* The court held that the statute did not contain a severability clause. *Id.* at 830. There is nothing to distinguish *Tester* from the case at bar, and thus the court is bound to hold that there is no severability clause in T.C.A. § 7–51–204, and thus that the doctrine of elision does not apply here. Therefore, T.C.A. § 7–51–204 is struck down in its entirety as an unconstitutional violation of the equal protection guarantees in the Constitutions of the United States and of Tennessee.[3]

## IV. Conclusion

Based on all the foregoing, Plaintiff's motion for partial summary judgment is denied, and Defendants' cross-motion for partial summary judgment is granted.

**3.** Due to the court's finding that § 7–51–204 violates the equal protection guarantees, it is unnecessary to address Defendants' argument in the alternative that the statute is unconstitutionally void for vagueness.