Vitolins Unemployment Compensation Case.
Department of Labor and Industry, Bureau
of Employment Security, Appellant, *v.*
Unemployment Compensation Board
of Review.

184

Argued March 9, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Morley W. Baker*, Assistant Attorney General, with him *Walter E. Alessandroni*, Attorney General, for Department of Labor and Industry, Bureau of Employment Security, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Jerome H. Gerber,* with him *Sidney G. Handler,* for claimant, intervening appellee.

OPINION BY ERVIN, J., April 14, 1964:

The claimant, Adolf Vitolins, who had been employed by the Bethlehem Steel Company for 12 years, was laid off on February 21, 1963. In 1962 his wages from the Bethlehem Steel Company were $5,310.87. Since 1956 Vitolins, with his family, owned and operated a farm as a side line activity. He had worked the farm during nonworking hours at the steel plant. A great deal of the work at the farm was done by his wife and children. The gross income from the farm during 1962 was $4,591.24, it having come from the sale of livestock, patronage dividends, rebates or refunds, agricultural program payments and rent received from a tenant. His expenses, itemized on his Federal income tax form[1] (and accepted by the Federal government as legitimate deductions in arriving at net farm profit or loss) were as follows:

| Items | Amount |
|---|---|
| Labor hired | $ 89.00 |
| Repairs, maintenance | 429.10 |
| Interest | 1,027.22 |
| Feed purchases | 1,635.01 |
| Seed, plants purchased | 178.00 |
| Fertilizers, lime | 470.97 |
| Machine hire | 179.00 |
| Supplies purchased | 243.75 |

[1] These expenses were taken from Schedule F, which is the form for reporting income and expenses from farming. It is clear from the record that all of the expenses above set forth were applicable to the farm and not to the house.

| | |
|---|---:|
| Breeding fees | 48.00 |
| Veterinary medicine | 137.65 |
| Gasoline, fuel, oil | 532.32 |
| Taxes | 818.67 |
| Insurance | 268.70 |
| Utilities (5/8) | 282.64 |
| Rent of farm pasture | 120.00 |
| Trucking | 222.36 |
| Truck hire | 36.00 |
| Car expenses | 226.12 |
| Advertising | 9.06 |
| Cattle registering | 8.50 |
| Baby chicks | 70.89 |
| Depreciation | 772.26 |
| Total | $7,805.22 |

He had a net operating loss of $3,213.98.

The Bureau of Employment Security, in reliance upon its Regulation 120, allowed only the expenses for labor, feed, seeds and plants, fertilizer and lime. Departmental Regulation 120, which became effective October 1, 1960, provided as follows: "1. For a claimant engaged in farming, 'gross income' from sales and services shall be reduced by subtraction of expenses for labor, feed, seeds and plants, fertilizer and lime." The bureau, therefore, found that the claimant had weekly earnings of $44.00.

| | |
|---|---:|
| Claimant's weekly benefit amount was | $40.00 |
| to which the bureau added a partial credit | 12.00 |
| making a total of | 52.00 |
| and then subtracted his weekly earnings | 44.00 |
| which left claimant with a partial benefit of only | 8.00 |

The claimant filed an appeal and the referee modified the decision of the bureau and awarded benefits at the rate of $40.00 per week. The bureau then ap-

pealed to the Board of Review and the board affirmed the decision of the referee. The bureau then took the present appeal in which the basic question is: What items are properly deductible from gross income to determine the claimant's net income.

Prior to the 1959 session of the General Assembly a claimant who operated a farm during a period of unemployment was ineligible for unemployment compensation benefits on the ground that he was self-employed, regardless of whether or not he received any net income from his farming operation: *Meckes Unemployment Compensation Case* (1959), 190 Pa. Superior Ct. 578, 155 A. 2d 463; *Kespelher Unemployment Compensation Case* (1955), 178 Pa. Superior Ct. 511, 116 A. 2d 239; *Muchant Unemployment Compensation Case* (1954), 175 Pa. Superior Ct. 85, 103 A. 2d 438.

These decisions made it clear that the Unemployment Compensation Law created a gross inequity against some partially self-employed individuals as against individuals who performed the same services for wages while in the employ of another. To correct this inequity the legislature in 1959 amended the law by adding thereto subsection 402(h), which provided: "An employe shall be ineligible for compensation for any week . . .

"(h) In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in 'employment' as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with

respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department." 43 PS §802(h).

The bureau interpreted the 1959 amendment in such a way as to give it power to further define "net earnings" as it did in Regulation 120. While it is true that the legislature, in §201 of the Unemployment Compensation Law, 43 PS §761, gave to the department the authority "to adopt, amend, and rescind such rules and regulations . . . as it deems necessary or suitable", it also provided that "such rules and regulations shall not be inconsistent with the provisions of this act. . . ." The referee and the board denied this power to the bureau. The majority of this Court are of the opinion that the board's interpretation is the correct one. An examination of the 1959 amendment will reveal that a claimant, in order to qualify for benefits and to escape disqualification on the ground of self-employment, had to meet the following three conditions: (1) The self-employment preceded claimant's layoff from his full-time work; (2) the self-employment continued without substantial change; and (3) the self-employment was not a primary source of livelihood.

If the claimant met these three tests, his unemployment compensation benefits were to be reduced by his "net earnings" from the self-employment. The legislature undoubtedly realized that a self-employed person's income might be produced in irregular amounts and at irregular periods. For example, a self-employed farmer works many months without income and then sells his crops at one time. It would be unfair to the claimant if his period of unemployment coincided with his harvest time income. He would be totally ineligible for benefits. On the other hand, if the same claimant were laid off at planting time, he would have no farm income during this period and his unemployment

compensation benefits would be inequitably high. It was, therefore, necessary to devise a method to prorate the fruits of the part-time self-employment over the entire year to arrive at a fair estimate of the claimant's weekly net earnings from such activity. This task was delegated by the legislature to the department in the following language: "Net earnings received by the employe with respect to such activity [self-employment] shall be remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department." We interpret this language, as did the board, to mean that the department has power to make regulations as to the period. We do not believe that the legislature intended to delegate to the department the power to define "net earnings" by rules and regulations.

It is a fundamental precept of statutory construction that words and phrases shall be construed according to their common and approved usage. Section 33, Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 PS §533.

A word used in a statute must be given its plain everyday meaning where not defined in the statute: *Com. v. McHugh,* 406 Pa. 566, 178 A. 2d 556.

Statutes are presumed to employ words in their popular sense, and when words used are susceptible of more than one meaning, the popular meaning will prevail: *Ferraro v. Crowell,* 198 Pa. Superior Ct. 222, 182 A. 2d 98.

Webster's New International Dictionary (Second ed. p. 1644) defines "net earnings" as: "excess of earnings over expenses, sometimes including interest charges, during a given period."

In the case of *Jones and Nimick Manufacturing Co. v. Com.,* 69 Pa. 137, our Supreme Court laid down this definition: "Net earnings or income are the products of the business, deducting the expenses only. . . ."

Where a statute failed to define "net earnings," the term must be given its usual and ordinary meaning, which is what is left after deducting necessary and legal items of expenses incident to the business: *Woods Lumber Co. v. MacFarland,* 209 Tenn. 667, 355 S.W. 2d 448.

"Net earnings" are the excess of gross earnings over expenditures defrayed in producing them, aside from, and exclusive of capital laid out in constructing and equipping a business: *Grand Traverse Hotel Co. v. U.S.,* 79 F. Supp. 860.

"Net earnings" is an accounting term describing what remains after various deductions, including depreciation, from gross earnings: *Bellingham Securities Syndicate v. Bellingham Coal Mines, Inc.,* 13 Wash. 2d 370, 125 P. 2d 668 (See Syllabus No. 4).

Interest on a debt is a proper deduction from gross earnings in determining "net earnings": *Belfast & M. L. R. Co. v. City of Belfast,* 77 Me. 445, 1 A. 362.

The bureau, by selecting only a few of the numerous farming expenses to the exclusion of all others, completely disregards the common meaning of "net earnings." To say that a farmer may deduct the cost of fertilizer from gross earnings, but cannot deduct the cost of repairing and maintaining his fertilizer spreader, or the gasoline necessary to run it, the hiring of the truck to haul it, or the taxes and insurance on his barn wherein he stores it, is absurd. No provision in Regulation 120 is made for the dairy farmer. He may not have to purchase seeds, plants and fertilizer and lime, but he will incur, as did the claimant, expenses for breeding fees, veterinary medicine and cattle registration. No provision is made in Regulation 120 for the deduction of these expenses. Each of the expenses listed by the claimant was essential to the production of the farm income. Without these items there would be no farm income with which to charge the claimant.

Yet the bureau would disregard all of these items in its computation of "net earnings."

It is also argued that the Board of Review does not have the power to strike down any part of Regulation 120. The answer to this is that the board, under §203 of the Unemployment Compensation Law, is given the power to hear appeals arising from claims for compensation and to take such action for the disposition of such appeals "as it deems necessary and consistent with this act." The bureau did not have the power to redefine "net earnings" contrary to the common and accepted meaning of such term. The portion of Regulation 120 which does this is contrary to and inconsistent with that portion of the 1959 amendment relating to "net earnings." The Board of Review, to properly pass upon this appeal, necessarily had the power to strike down that portion of Regulation 120 in order to do justice to the claimant in this case.

Decision affirmed.

DISSENTING OPINION BY WOODSIDE, J.:

I dissent in this case and in the *Springer Unemployment Compensation Case.* I agree with the majority that the bureau's rules concerning the deductions allowed to determine "net earnings" are too restrictive, but I do not agree with the majority that all the deductions allowed by the board are proper. In the *Springer* case this Court approves the board's allowance of "donations" as a deduction. In effect this is granting the claimant additional unemployment compensation to pay his donations. Such allowances do not fall within the purpose of unemployment compensation.

In the *Vitolins* case, the steel worker residing on a farm, is allowed deductions for payments of $1027 interest, $818 taxes, $268 insurance and $772 depreciation which, as I interpret the record, relate to the entire farm *including* his own residence. Furthermore,

the claimant undoubtedly receives a substantial amount of food off the farm for himself and family which is apparently ignored in determining net income.

I would remand these cases to the board for consideration of the net income on some more realistic standards than the blind acceptance of deductions carried on the claimant's income tax returns. It should be the burden of the claimant to establish before the compensation authorities the necessary items to establish his net income.

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot accept the conclusion reached by the majority that the Unemployment Compensation Board of Review has the right to nullify regulations adopted by the Department of Labor and Industry. Section 2 of the Unemployment Compensation Act of December 5, 1936, P. L. (1937) 2897, Art. II, §201, as amended, 43 P.S. 761, places upon the department the duty to administer and enforce the act with power to adopt regulations. The Administrative Code of June 4, 1945, P. L. 1388, §21, 71 P.S. 1710.21, as amended, Act of September 28, 1951, P. L. 1561, §2, 71 P.S. 1710.21, provides that all regulations of administrative agencies shall be approved by the Department of State as to legality; and the Department of Labor and Industry is included within the provision of said §21 by §51, 71 P.S. 1710.51. In the absence of evidence to the contrary, it must be concluded that Regulation 120 was so approved. The Unemployment Compensation Board of Review is also included as an agency regulated by said §51 of the Administrative Code. However, nowhere in the Unemployment Compensation Law or the Administrative Code do I find any authority for the board to nullify a regulation regularly adopted and approved as aforesaid. Under §203 of the Unemployment Compensation Law, 43 P.S. 763,

the Unemployment Compensation Board of Review is part of the department. It is created "in the department". Under (c) of said §203 it is described as a departmental administration board and given powers and duties generally vested in and imposed upon such boards by the Administrative Code. Section 203(d) specifically gives it power to hear appeals arising from claims, adopt rules of procedure, undertake investigations, "take such action required for the hearing and disposition of appeals as it deems necessary and consistent with this act." I do not construe this last provision as giving it power to nullify the law or departmental regulations. Further, §203(f) requires the board to submit to the department a biennial report and such recommendations for the improvement of its service and the amendment of the act as it deems proper. If the board believes the regulations of the department unworkable or unlawful, it may use these opportunities to suggest changes.

The Administrative Code does not add to the powers of the board beyond what is given to it in the Unemployment Compensation Act since the former is procedural in purpose.

A valid rule or regulation duly promulgated by an administrative agency is binding on the agency as well as upon all those to whom its terms apply and has the force and effect of law. 1 P.L.E. Administrative Law and Procedure §35. Clearly the board has no power to ignore Regulation 120 and use its own method of determining net earnings in this case. Although the board performs quasi-judicial duties, it is not a court and is without power to set aside the law or a duly promulgated regulation which has the effect of law. That privilege must be exercised by this Court if such regulation is inconsistent with the law which authorized its promulgation.

Although the majority approves the avoidance of Regulation 120 by the board, it disapproves the action of the board in substituting its definition of the term "net earnings". Here again I differ with the majority.

Prior to the 1959 amendment of the Unemployment Compensation Act anyone engaged in self-employment during a period of unemployment from regular work was denied benefits under the act. The Act of 1959 continued to render such persons ineligible except in cases "of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work . . . and continued subsequent to separation from such work *when such activity is not engaged in as a primary source of livelihood.*" (Emphasis supplied) It is further provided in that amendment that "Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department." Act of December 17, 1959, P. L. 1893, §10, 43 P.S. 802 (h).

The majority interprets that last sentence to mean that the department may determine only what portion of net earnings from part-time employment shall be applicable to the period of unemployment from the claimant's full-time employment, but that it has no power to set rules for the general determination of net earnings in those cases. In adopting this restrictive interpretation of the amendment the majority ignores the previous requirement that such activity shall not be engaged in as a primary source of livelihood.

I see no good reason for denying the department full power to set reasonable rules for determining net earnings. Such claimants are exceptions to the general rule that persons who are self-employed during layoffs

from their regular employment are not eligible for compensation. The act, as I interpret it, states expressly that in such cases net earnings shall be determined according to rules and regulations adopted by the department.

If the majority view is to prevail, the bureau and the board will be required to examine thoroughly, and audit, every outside business and farming activity engaged in by unemployment compensation claimants so as to determine their gross income, which should include the farm products used by farmers and their families and the use of the building thereon as their place of abode; and further, the propriety of all actual and technical deductions, such as labor payments to other members of his family, depreciation, obsolescence, casualty losses, taxes, donations, inventory buildup, and innumerable other items taxpayers generally claim in order to secure reduction of their federal income obligations, in ascertaining their taxable income. The legislature did not intend to impose this burden on the unemployment compensation authorities when it provided that special consideration be given to claimants who had been engaged in outside business activities on a part-time basis when regularly employed. It is a rare case when a person who has lost his regular employment does not render full-time effort and attention to his "sideline" during his period of unemployment to make it his primary source of livelihood during that period. However this may be, it is unfair to other unemployed persons who are denied compensation because they are truly self-employed during their periods of layoff or secure temporary employment during such periods. It bears repeating that the Unemployment Compensation Law was not designed to insure a weekly income for those engaged in business ventures who may not realize a profit during various weekly

periods. *Dawkins Unemployment Compensation Case,*
358 Pa. 224, 56 A. 2d 254 (1948).

I think the department acted reasonably in adopt-
ing Regulation 120 as a means of distinguishing be-
tween enterprises which constitute a primary source
of livelihood and those which constitute part-time or
merely additional and secondary sources.

I would sustain Regulation 120 and remand this
case to the board for an adjudication in accordance
with it.

Therefore, I dissent.

Springer Unemployment Compensation Case.
Department of Labor and Industry, Bureau
of Employment Security, Appellant, *v.*
Unemployment Compensation Board
of Review.

Argued March 9, 1964. Before Rhodes, P. J., Er-
vin, Wright, Woodside, Watkins, Montgomery, and
Flood, JJ.

*Morley W. Baker,* Assistant Attorney General, with
him *Walter E. Alessandroni,* Attorney General, for De-
partment of Labor and Industry, Bureau of Employ-
ment Security, appellant.